IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Natanael María, et al,<br><br>Plaintiffs,<br><br>v.<br><br>Héctor Emilio Colón<br><br>Defendant. | Civil No. 23-1344 (GLS) |

**OPINION AND ORDER**

Natanael María Román ("Natanael"), Lorenzo María, and Matea Román (Lorenzo María and Matea Román are jointly referred to as "Natanael's parents") filed a suit for personal injury under diversity jurisdiction, 28 U.S.C. § 1332, against Héctor Emilio Colón ("Colón"). Docket No. 1. Pending before the Court is Colón's motion for summary judgment. Docket Nos. 61, 62. Plaintiffs opposed at Docket Nos. 72, 73. For the reasons set forth below, Colón's motion for summary judgment is **GRANTED in part and DENIED in part**.

### I.      Procedural Background

Plaintiffs filed the underlying complaint on June 30, 2023. Docket No. 1. It included Plaintiffs, Natanael and his parents. It included as Defendants, Colón, his wife Tamara Babilonia ("Babilonia"), and their Conjugal Partnership. Id. Babilonia and the Conjugal Partnership moved to dismiss Natanael's claims. Docket No. 11. Colón moved for the dismissal of all claims. Docket No. 12. Both motions argued that Plaintiffs' claims were time barred. Docket Nos. 11, 12. Additionally, Babilonia and the Conjugal Partnership argued that, in any event, Colón's actions were not committed for the benefit of the Conjugal Partnership and that, for that additional reason, Natanael's claims against Babilonia and the Conjugal Partnership ultimately failed. Docket No. 11. The Court dismissed all claims against Babilonia and the Conjugal Partnership. Docket No. 35. The Court also dismissed Natanael's claim for punitive damages against Colón. However, the

María, et al. v. Colón
Civil No. 23-1344 (GLS)
Opinion and Order

Court declined to dismiss Natanael's tort claims against Colón and the claims brought by Natanael's parents, which Colón now seeks to dispose of at the summary judgment stage. Docket Nos. 61, 62.

## II.     Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Dunn v. Trs. Of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal quotations and citations omitted). "Facts are material when they have the 'potential to affect the outcome of the suit under the applicable law.'" Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the initial burden of establishing "the absence of a genuine issue of material fact." See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In evaluating a motion for summary judgment, the court must view "the record in the light most favorable to the nonmovant and must make 'all reasonable inferences in that party's favor.'" Espacio Residential, LLC v. Gómez-Sánchez, 2023 WL 3548974 at 2 (D.P.R. 2023) (quoting García-García v. Costco Wholesale Corp., 878 F3d 411, 417 (1st Cir. 2017)). The non-movant must then demonstrate "through submissions of evidentiary quality, that a trial worthy issue persists." See Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006). However, when the non-movant bears the ultimate burden of proof at trial, the non-movant may not "rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). Further, while the Court draws reasonable inferences from the record in the light most favorable to the non-movant, it casts aside and ignores "conclusory allegations, improbable inferences, and unsupported speculation." See García-García v. Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017) (internal quotations and citations omitted).

María, et al. v. Colón
Civil No. 23-1344 (GLS)
Opinion and Order

### III.     Uncontested Facts

After examining the parties' submissions but having disregarded any legal arguments and conclusory statements in the parties' statements of facts,[1] the Court finds that the following material facts are not in dispute.

1. Colón began attending Comunidad Evangélica de Cupey ("CECU") in the 1980s when he was in college. Plaintiffs' Additional Statement of Uncontested Material Facts ("PASUMF")[2] at Docket No. 72 ¶ 4; Docket No. 72-6 at p. 4.

2. Natanael was born on June 12, 1983. Defendant's Statement of Uncontested Material Facts ("DSUMF") at Docket No. 61 ¶ 3; Docket No. 1.

3. Colón met Natanael and his parents at CECU. PASUMF ¶ 5; Docket No. 72-6 at p. 4.

4. Colón became a formal member of CECU in the early 1990s. PASUMF ¶ 6; Docket No. 72-6 at p. 4.

5. Colón at times worked with the youth group, lead them, and taught them the Bible. PASUMF ¶¶ 10-12; Docket No. 72-6 at p. 9.

6. Natanael and his brother Esau were part of the youth group where Colón taught around 1999 and 2000. PASUMF ¶¶ 13-14; Docket No. 72-6 at p. 11.

7. The youth group, led by Colón, would meet every Saturday, equaling to four times a month. PASUMF ¶ 16; Docket No. 72-6 at p. 13.

8. Colón signed a baptism record as "youth pastor." PASUMF ¶ 17; Docket No. 72-4; Docket No. 72-6 at p. 14.

9. Colón preached the Lord's word at the pulpit at least one a month, and Natanael, Esau and their parents attended. PASUMF ¶¶ 26-27; Docket No. 72-6 at pp. 27-29.

---

[1]     While Defendant included 59 statements of fact and Plaintiffs included 105 additional statements of fact, not all are material to the issues before the Court now.

[2]     The Court notes that Colón did not file a reply to Plaintiffs' opposition to summary judgment. Because Colón failed to controvert Plaintiffs' Additional Statement of Uncontested Material Facts, those facts supported by proper record citations are deemed admitted. Local Rule 56(e).

10. Colón had influence over Natanael and Esau. PASUMF ¶ 24; Docket No. 72-6 at p. 25.

11. Colón sexually assaulted Natanael six (6) times on or about 1999 and 2002, while he was fifteen (15) years old and until he was eighteen (18) years old. DSUMF ¶ 1; Docket No. 1 at ¶¶ 26, 31.

12. Colón touched Esau while he was sleeping one night at Colón's house. PASUMF ¶ 21; Docket No. 72-6 at p. 22.

13. In 2018, while stationed in Leesville, Louisiana, Natanael had a therapist that was a psychologist and Major in the military. DSUMF ¶ 19; Docket No. 61-1 at pp. 18-19.

14. In 2018, Natanael told his therapist that something had happened with someone he knew and trusted. Natanael did not provide details because he felt embarrassed and guilty. DSUMF ¶ 20; Docket No. 61-1 at p. 22.[3]

15. Natanael did not know how to explain to his therapist what had happened, but knew it was affecting his life. PASUMF ¶ 37.

16. In 2020, Natanael began therapy with Ronda Madsen ("therapist Madsen") after moving to Wisconsin. DSUMF ¶ 22; Docket No. 61-1 at pp. 22, 24.

17. During a therapy session on November 19, 2020, Natanael told therapist Madsen that there had been a situation in which someone had touched his penis. DSUMF ¶ 27; Docket No. 61-1 at pp. 30-31.

18. The only person Natanael told therapist Madsen had touched him in such manner was Colón. DSUMF ¶ 27; Docket No. 61-1 at p. 31.

19. In a progress note, dated November 19, 2020, therapist Madsen noted: "[Natanael] was molested as a teenager. He did not really tell many people about it. He and his wife did counseling a while back and some of this came out but not all. He does not want her to know all the details of it." DSUMF ¶ 25; Docket No. 61-3. PASUMF ¶ 37; Docket No. 61-3.

---

[3] The Court notes that Natanael alleged in his complaint that "in 2018, he managed to speak to a psychologist, who told him that his mental anguishes and mental struggles were due to sexual assaults he experienced by the defendant." Docket No. 1 ¶ 32.

María, et al. v. Colón
Civil No. 23-1344 (GLS)
Opinion and Order

20. Natanael told therapist Madsen some of the things that happened with Colón, that he felt afraid because he did not know why his body was reacting to something he did not want, and that he felt like a coward for not stopping Colón. PASUMF ¶ 41; Docket No. 72-5 at pp. 16-18.

21. In a progress note, dated June 17, 2022, therapist Madsen recorded: "History of sexual abuse reported at visit: multiple." DSUMF ¶ 26; Docket No. 61-4.

22. In a progress note, dated June 29, 2022, therapist Madsen noted: "[Natanael] is finding it that it is hard for him to be around any male given his sexual abuse history and the inappropriate touching that he endured from a boss at work recently." DSUMF ¶ 28; Docket No. 61-5.

23. Sometime in July 2022 through a phone conversation with his father, Natanael learned that his brother Esau had been subjected to the same encounters by Colón. PASUMF ¶¶ 47, 72; Docket No. 72-5 at pp. 18-19.

24. Natanael met with therapist Madsen sometime in July 2022 to tell her about what had happened to Esau. PASUMF ¶ 47; Docket No. 72-5 at pp. 18-19.

25. During this therapy session sometime in July 2022, Natanael blamed himself for what had happened to Esau. Docket No. 72-5 at p. 20.

26. During this therapy session, therapist Madsen told Natanael that what had happened to Esau was not his fault because he had also been abused by Colón. PASUMF ¶ 60; Docket No. 72-5 at pp. 19-20.

27. Lorenzo María Gullón ("Lorenzo") is Natanael's father. DSUMF ¶ 31.

28. Lorenzo is married to Matea Román ("Matea"). DSUMF ¶ 31.

29. Natanael told Lorenzo that Colón had sexually assaulted him. DSUMF ¶ 34.

30. Upon learning that Colón had sexually abused Natanael, Lorenzo told Matea. DSUMF ¶¶ 35, 98.

31. In June 2022, Esau told his father Lorenzo that Colón had sexually abused him. PASUMF ¶ 91; Docket No. 72-8 at p. 7.

5

32. By the time he told Lorenzo of the abuse, Esau did not know Colón had also abused Natanael. PASUMF ¶ 96; Docket No. 72-8 at p. 7.

33. Esau learned that Colón had sexually abused Natanael in July 2022. PASUMF ¶ 97; Docket No. 72-8 at p. 8.

34. Javier López ("Pastor López") has been a pastor at CECU for the past twenty (20) years. DSUMF ¶ 46.

35. Lorenzo called Pastor López on June 27, 2026. DSUMF ¶ 53.

36. Pastor López became very worried about what Lorenzo told him during the phone call and consequently called Colón. DSUMF ¶ 53.[4]

37. On June 28, 2022, Pastor López sent Lorenzo the following text message: "Good afternoon, Lorenzo. I talked to Héctor [Colón]. When it's appropriate, call me and let me know." DSUMF ¶ 42; Docket No. 66-3.

38. On June 30, 2022, at 8:55 a.m., Lorenzo sent Pastor López the following text message: "Hi, God bless you!! I don't know whether you talked to the elderly and what you settled on!! Please call me when you can[.]" DSUMF ¶ 42; Docket No. 66-3.

39. On June 30, 2022, at 10:52 a.m., Pastor López sent Lorenzo the following text message: "They asked me to move the meeting to tonight. I know that hearing what I have to tell them is going to be very distressing and totally unexpected I'll be grateful for your Prayers. Héctor [Colón] talked to Tamara. She needs some time and space to process this." DSUMF ¶ 42; Docket No. 66-3.

40. On that same day, Lorenzo responded to Pastor López: "Hi, yes!! Héctor [Colón] already called Me and said that he talked to Tamara, we'll continue to pray So that God will guide us." DSUMF ¶ 42; Docket No. 66-3.

### IV.   Discussion

A federal court sitting in diversity must apply state substantive law. Suero-Algarín v. CMT Hosp. HIMA San Pablo Caguas, 957 F.3d 30, 39 (1st Cir. 2020). For diversity tort actions such as

---

[4]   While Plaintiffs deny this statement, what they actually deny is the content of the phone call—that it had anything to do with Natanel's sexual abuse. See Docket No. 72 at p. 7.

6

María, et al. v. Colón
Civil No. 23-1344 (GLS)
Opinion and Order

this one, Puerto Rico substantive law controls. The claims before the Court involve Puerto Rico's general tort statute.[5] Article 1802 of the Puerto Rico Civil Code provided "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage done." 31 P.R. Laws Ann. § 5141. A one-year statute of limitations applies to claims under Article 1802. That period ordinarily begins to accrue "at the time that the aggrieved party knows (or should have known) of both his [or her] injury and the identity of the party who caused it." González-Figueroa v. J.C. Penney Puerto Rico, Inc., 568 F.3d 313, 318 (1st Cir. 2009). See 31 P.R. Laws Ann. § 5298 (the statute of limitations for filing a tort claim under Article 1802 commences when "the aggrieved person had knowledge thereof."). A plaintiff has knowledge of the injury when he or she has notice of (1) the injury and (2) the person who caused it. Rodríguez-Suris v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997). A person may have actual knowledge or may be deemed to have had knowledge. "Actual knowledge" occurs when a plaintiff is "aware of all the necessary facts and the existence of a likelihood of a legal cause of action." Alejandro-Ortiz v. Puerto Rico Elec. Power Auth., 756 F.3d 23, 27 (1st Cir. 2014) (quoting Rodríguez-Suris, 123 F.3d at 14). A plaintiff "is deemed to be on notice of [his or] her cause of action if [he or] she is aware of certain facts that, with the exercise of due diligence, should lead [him or] her to acquire actual knowledge of [his or] her cause of action." Rivera-Carrasquillo v. Centro Ecuestre Madrigal, Inc., 812 F.3d 213, 216 (1st Cir. 2016) (cleaned up). If a plaintiff brings an action more than a year after the injury, "[he or] she bears the burden of proving that [he or] she lacked the requisite 'knowledge' at the relevant times" and that for that reason the statute of limitations period of one year has not elapsed. Alejandro-Ortiz, 756 F.3d at 27 (quoting Hodge v. Parke Davis & Co., 833 F.2d 6, 7 (1st Cir. 1987)).

1. **Natanael's Claim under Article 1802**

Plaintiffs filed the underlying complaint on June 30, 2023. The dispositive question here is whether Natanael possessed, or reasonably should have possessed, knowledge of his injury before June 30, 2022—more than one year prior to filing the complaint. Colón argues that Natanael's

---

[5] Although a new Civil Code was adopted in 2020, the Puerto Rico general tort statute did not suffer substantial changes. See González-Ortiz v. Puerto Rico Aqueduct and Sewer Auth., 2024 WL 3759659, at *10-11 (D.P.R. Aug. 12, 2024); QBE Seguros v. Morales-Vázquez, 2023 WL 3766078, at *3 (D.P.R. 2023). Nonetheless, because the events giving rise to this action took place from 1999 until 2002, Natanael's claims will be evaluated under the Puerto Rico Civil Code of 1930. See Candelaria-Fontanez v. Federal Bureau of Prisons, 2023 WL 2895150, at *3 (D.P.R. April 11, 2023); Wiscovitch v. Cruz, 2022 WL 1272153, at n.15 (D.P.R. 2022). Natanael's parents' claims stem from damages allegedly suffered after the year 2020. The 2020 Civil Code applies to those claims.

7

claims are time-barred. First, he contends that Natanael had actual knowledge of the relevant facts at the time of the alleged abuse which occurred more than twenty years ago. Docket No. 65 at p. 7. Alternatively, Colón maintains that, at the very least, Natanael had deemed knowledge of the facts by 2018, when he first discussed the events with a therapist. Id. at p. 8. Colón further points to progress notes from Natanael's second therapist, recorded between November 2020 and June 2022, which he contends confirm that Natanael was aware of the tortious nature of the events before July 2022. Id. at p. 7. Natanael presents a different account. Although he acknowledges discussing his past interactions with Colón during therapy, he asserts that he did not recognize those encounters as sexual abuse until July 2022. Docket No. 73 at p. 10. According to Natanael, Colón groomed and manipulated him as a teenager, repeatedly assuring him that their physical encounters were normal and attributable to Natanael's sexual orientation. Id. at pp. 11-12. Natanael maintains that this manipulation by the leader of his church's youth group prevented him from understanding that the encounters constituted abuse. Id. at p. 12. In his view, only after extensive therapy did he come to understand that the physical interactions with Colón amounted to sexual abuse. Id.

"The concept of deemed knowledge is essentially parlance for the discovery rule." Alejandro-Ortiz, 756 F.3d at 28. Under this principle, the one-year statute of limitations does not begin to run until the plaintiff either possesses, or through the exercise of reasonable diligence would have possessed, sufficient information to bring forth a legal claim. Id. The discovery rule recognizes that where a defendant's conduct by its very nature prevents discovery of an injury, accrual of the cause of action is delayed until a reasonable person in plaintiff's position would have discovered the harm. Riley v. Presnell, 409 Mass. 239, 245–46, 565 N.E.2d 780, 785–786 (1991). Puerto Rico law recognizes a similar exception; the statute of limitations will be tolled where a "tortfeasor, by way of assurances and representations, persuades the plaintiff to refrain from filling suit, or otherwise conceals from the plaintiff the facts necessary for her to acquire knowledge." Alejandro-Ortiz, 756 F.3d at 28. However, reliance upon representations made by a tortfeasor must be reasonable, and "the determination of the reasonableness of a plaintiff's reliance on the assurances of others involves an evaluation that, depending upon the circumstances, may or may not be a question for the finder of fact, and thus may or may not preclude summary judgment." Rodríguez-Suris, 123 F.3d at 17; Doe 171 v. Order of Saint Benedict, 2012 WL 1410320, at *3

8

(D.P.R. 2012) (the discovery rule is not without limits as it does not relieve a plaintiff of the obligation to exercise reasonable diligence).

Under this framework, the limitations period begins to run when a reasonable person in the plaintiff's position would have been able to discern either the harm or the cause of the harm. Riley, 565 N.E.2d at 785. "The reasonable person who serves as the standard in this evaluation, however, is not a detached, outside observer assessing the situation without being affected by it. Rather, it is a reasonable person who has been subjected to the conduct which forms the basis for the plaintiff's complaint." Id. Accordingly, if the experience giving rise to the claim would naturally affect or impair the judgment of an otherwise reasonable person, that altered perspective becomes the benchmark for determining when discovery should occur. Id. at 786 ("Accrual of the cause of action occurs when the ordinary reasonable person who had been subject to the experience would have discovered that the injury was caused by that experience.").

Guided by these principles, the Court acknowledges that Colón's alleged grooming could have reasonably prevented Natanael from recognizing the encounters as abuse at the time they occurred. Natanael was a fifteen-year-old minor in a close-knit evangelical community and under the authority of a youth pastor who allegedly distorted his understanding of the events. Docket No. 1 ¶¶ 14-16, 21, 31. At that stage, delayed recognition would not be surprising, but rather expected. However, the analysis changes once Natanael reached adulthood and sought professional treatment. Natanael alleged in his complaint that in 2018 he spoke with a psychologist who informed him that his psychological struggles were attributable to sexual assaults he experienced at the hands of Colón. Docket No. 1 ¶ 32. At that time, Natanael was approximately thirty-five years old. He retained full memory of the encounters, was sufficiently aware of their significance to mention them in therapy and acknowledged that something that had happened with "someone he knew and trusted" was affecting his life. Docket No. 61-1 at p. 22; Docket Nos. 61-2-61-4. A licensed mental health professional explicitly linked those struggles to sexual trauma. Viewed in the light most favorable to Natanel, these facts establish sufficient knowledge to trigger the limitations period. But even if Natanael did not immediately accept the therapist's characterization of the events, a reasonable adult in his position— having been informed by a trained professional that his distress stemmed from sexual abuse— would have likely understood that he might possess a legal claim against Colón. Espada v. Lugo, 312 F.3d 1, 4 (1st Cir. 2002) ("such tolling may be

María, et al. v. Colón
Civil No. 23-1344 (GLS)
Opinion and Order

halted by further information that renders plaintiff's reliance on those assurances no longer reasonable, so that plaintiff has an obligation of diligent investigation").

The Court is mindful that Natanael experienced feelings of embarrassment and guilt and that he struggled to articulate the events during therapy. And it is only logical that it may be extraordinarily difficult for sexual abuse victims to discuss specifics of their abuse experiences. But difficulty accepting and articulating such a painful experience does not equate lack of knowledge that the underlying conduct constituted abuse. By 2018, Natanael was no longer an adolescent under the psychological sway of a religious authority figure. Further, the evidentiary record developed during discovery undermines Natanael's claim of delayed discovery. The records of Natanael's second therapist contain multiple entries documenting Natanael's own accounts of sexual abuse outside of the limitations period. In a progress note dated November 19, 2020, therapist Madsen recorded that Natanael had been molested as a teenager but had not told many people about it. Docket No. 61-3. A subsequent note date June 17, 2022, states: "History of sexual abuse reported at visit: multiple." Docket No. 61-4. Another entry from June 29, 2022, references Natanael's "sexual abuse history." Docket No. 61-5. In an additional note, under a section titled "Patient-Identified Needs/Problems," the first item listed is "Abuse (Physical/Sexual/Emotional)." Id. While Natanael argues that he had no knowledge of what therapist Madsen wrote on these progress notes, without the testimony of the therapist to establish otherwise, the only logical conclusion is that the therapist would have documented what Natanael reported during treatment. And even taking the last of the foregoing notes by therapist Madsen on June 29, 2022, as the latest date on which Natanel could have been made aware of his injury, Natanael's tort claim would still be untimely. In sum, by November 2020, Natanael had already been told by his first therapist that he had been sexually abused and by that date his second therapist had already noted the abuse. The tortious nature of the events were characterizations that Natanael conveyed, however imperfectly, to his second therapist during treatment. At the very latest, this would have been the moment when the statute of limitations began to run.

Natanael argues that Colón's grooming prevented him from recognizing the abuse even as an adult. The Court does not doubt that such manipulation may have had lasting psychological effects on Natanael. But the "reasonable person in the plaintiff's position" standard is not frozen at the time of the original abuse. Riley, 565 N.E.2d at 785. It must be applied dynamically as the

10

María, et al. v. Colón
Civil No. 23-1344 (GLS)
Opinion and Order

plaintiff's circumstances evolve. By his mid-thirties, Natanael had served in the military, lived independently, married, and raised a family. He had also participated in multiple psychotherapy sessions during which the events involving Colón were discussed. The grooming that may have been powerful when Natanael was fifteen (15) cannot, as a matter of objective law without additional supporting evidence (e.g., the testimony of a treating physician or a mental health expert, as discussed more fully below), be deemed to have so completely dominated the judgment of a thirty-five-year-old adult that he remained incapable of recognizing what his treating therapists had already explicitly identified as sexual abuse. To hold otherwise would effectively nullify the statute of limitations for tort claims in all cases of childhood sexual abuse—a result that has not been subject to legislation in Puerto Rico.

And even if the Court were inclined to submit the accrual question to a jury, Natanael's claim would nonetheless fail for a more fundamental reason: the record contains no evidence from which a rational jury could infer that a reasonable person in his position would not have discovered the injury before June 30, 2022. The therapy notes that Natanael submits to show that he obtained knowledge that he was sexually abused on or after June 30, 2022, suggest the opposite. On a progress note, from July 7, 2022, therapist Madsen noted: "His sister does not understand the sexual abuse and worked with him on how to address this with her and how to conceptualize it in his own mind so he can come to terms with her difficulties understanding." Docket No. 72-2. On a subsequent progress note from August 3, 2022, therapist Madsen noted: "One intervention is to help him articulate how his childhood abuser groomed him and manipulated him through the abuse, so that he can articulate this to the lawyers who have asked how it occurred if he was not drugged or physically forced." Docket No. 72-3. These progress notes suggest that Natanael faced difficulty communicating the abuse to others— both to his family and in legal settings— where his account of the abuse was met with skepticism. But they also suggest that he did have knowledge of the injury despite his difficulties articulating these traumatic experiences.

Critically, Natanael did not produce expert testimony that could aid a reasonable jury understand how Colón's grooming could have prevented an ordinarily reasonable adult from recognizing sexual abuse after being explicitly informed of the abuse by his therapist. In cases where courts have allowed similar claims to proceed to trial, plaintiffs have presented expert psychiatric testimony on how trauma could delay the recognition of abuse. See Riley, 565 N.E.2d

María, et al. v. Colón
Civil No. 23-1344 (GLS)
Opinion and Order

at 785-786. Natanael has offered no such evidence, nor has he procured the testimony of the mental health professional whose records he relies upon. Therapist Madsen's progress notes are Natanael's primary evidence, yet he has offered no affidavit or testimony from her addressing her clinical assessment of his psychological state or his ability to recognize abuse. Without that evidence, Natanael's claims on accrual rely solely on his own assertion that he did not subjectively believe that he had been sexually abused despite therapists' explicit characterization of the conduct as molestation.

Under Puerto Rico law, a plaintiff cannot carry the burden of proving lack of knowledge with "[c]onclusory allegations, improbable inferences, and unsupported speculation." Velázquez-Pérez, 753 F.3d at 270. A self-serving declaration that one did not subjectively appreciate an injury, standing alone and contradicted by the clinical record, is precisely the kind of unsupported assertion the summary judgment standard is designed to test. Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). The contrast between the evidence offered by Natanael here and the evidence presented in other cases where courts have denied summary judgment is instructive. In Riley, the plaintiff submitted his own affidavit, his treating physician's affidavit, and expert psychiatric testimony. 565 N.E.2d at 785-786. In Hoult v. Hoult, the plaintiff submitted her deposition transcripts and those of her therapist corroborating complete memory repression prior to 1985. 792 F.Supp.143, 144 (D. Mass. 1992). Yet, in this case, having exhausted discovery, we have Natanael's testimony against a clinical record that documents a mental health professional using the words "sexual abuse" and "molestation" to describe his experience years prior to the limitations period.

To be sure, the specificity of Natanael's grooming allegations explains why a fifteen-year-old might not immediately recognize abuse. But the allegations do not explain why a thirty-five-year-old adult, after being told by a therapist that he had been sexually abused, would still fail to recognize the abuse and initiate a legal claim. Indeed, the record here substantiates a conclusion that Natanael had clearer notice than other plaintiffs in comparable cases where courts have deemed a legal action barred by the applicable statute of limitations. See Doe 171, 2012 WL 1410320, at *2 (action barred by the statute of limitations when there was evidence that the plaintiff's own statements demonstrated sufficient awareness prior to the limitations period). On

12

María, et al. v. Colón
Civil No. 23-1344 (GLS)
Opinion and Order

this record, no reasonable jury could conclude that Natanael lacked knowledge of his injury and of the culprit of the injury before June 30, 2022. Natanael's claims are therefore time-barred.

### 2. Natanael's Parents' Claims under Article 1536

Colón argues that Natanael's parents' claims for damages due to emotional distress are time-barred. He maintains that Natanael's father, Lorenzo, knew of the alleged abuse before July 2022. Colón relies on the deposition testimony of Pastor López, who stated that Lorenzo called him on June 27, 2022, after Natanael allegedly told Lorenzo that Colón had sexually abused him. Plaintiffs' counter that Pastor López's testimony constitutes inadmissible hearsay and cannot be considered at the summary judgment stage.

Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Affidavits and sworn testimony are an acceptable form of evidence to support an opposition to motion for summary judgment. Malavé-Torres v. Cusido, 919 F.Supp.2d 198, 204 (D.P.R. 2013). In fact, "even a clearly self-serving affidavit constitutes evidence which the court must consider when resolving summary judgment motions" if it contains specific facts and is based on first-hand knowledge. Id.; Levine-Díaz v. Humana Health Care, 990 F.Supp.2d 133, 140 (D.P.R. 2014). However, evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered in summary judgment. Vázquez v. López-Rosario, 134 F.3d 28, 33 (1st Cir. 1998); Dávila v. Corp. De Puerto Rico Para La Difusión Pública, 498 F.3d 9, 17 (1st Cir. 2007). As such, a deposition testimony based only on inadmissible hearsay cannot defeat a motion for summary judgment.

Hearsay consists of out of court statements offered to prove the truth of the matter asserted. See Fed. R. Evid. 801(c). Colón relies on Pastor López's testimony to establish that Lorenzo knew of the alleged abuse before July 2022. According to Pastor López, Lorenzo told him during a June 27, 2022, phone call that Natanael had disclosed the abuse to him. This account contains two out-of-court statements: (1) Natanael's alleged statement to Lorenzo and (2) Lorenzo's alleged statement to Pastor López. As such, the testimony constitutes hearsay within hearsay that is being presented to establish the truth of the matter (i.e., that Lorenzo knew of the abuse on June 27,

13

María, et al. v. Colón
Civil No. 23-1344 (GLS)
Opinion and Order

2022), which is admissible only if each layer of the statement independently falls within a recognized exception to the hearsay rule. See Fed. R. Evid. 805.

Colón has not identified any applicable exception that would render either out-of-court statement admissible. Pastor López had no personal knowledge of any conversation between Natanael and Lorenzo. He merely recounts what Lorenzo allegedly told him about what Natanael purportedly said. Moreover, both Natanael and Lorenzo testified in their respective depositions that Natanael disclosed the events to Lorenzo sometime in July 2022, not in June. Because the statement is offered to prove the matter asserted and contains multiple layers of hearsay without a recognized exception, it is inadmissible. Dávila, 498 F.3d at 17 ("It is black-letter law that hearsay evidence cannot be considered on summary judgment.").

Colón also relies on text messages between Pastor López and Lorenzo between June 28 and June 30, 2022, to prove that Lorenzo had knowledge of Natanael's abuse at the hands of Colón. However, the text messages between Pastor López and Lorenzo between June 28 and June 30, 2022, do not specifically identify Natanael as the victim of the abuse being discussed. Given that Lorenzo alleged that he had also learned of Esau's abuse by Colón during the same period, the Court cannot conclude that the communications pertain to Natanael instead of Esau. Ambiguities must be resolved in favor of Plaintiffs, as required at the summary judgment stage. Because a genuine issue of material fact exists as to when Natanael's parents acquired knowledge of Natanael's abuse, summary judgment is not warranted as to the parents' derivative claims against Colón.

## V.    Conclusion

For the reasons discussed above, Defendant's motion for summary judgement at Docket No. 62 is **GRANTED in part** and **DENIED in part**. Natanael's claims against Colón are time barred and will be dismissed. Natanael's parents' claims against Colón remain and will proceed to trial. Partial Judgment to be entered. Trial to be scheduled.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 12th day of March 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge